*In re* MARRIAGE OF MARILYN TREACY, n/k/a Marilyn Baxter, and JOHN J. TREACY (Marilyn Treacy, n/k/a Marilyn Baxter, Plaintiff-Appellant, v. Estate of John J. Treacy, Deceased, *et al.*, Defendants-Appellees).

First District (4th Division)   No. 1—89—3104

Opinion filed September 28, 1990.

JIGANTI, J., dissenting.

Owen L. Doss, James M. Forkins, and Joseph D. Keenan III, all of Doss, Puchalski & Keenan, of Chicago, for appellant.

Maureen A. McGuire and Robert J. Hourigan, both of Gorham, Metge, Bowman & Hourigan, of Chicago, for appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Marilyn Treacy, plaintiff, brings this appeal from an order of the circuit court of Cook County granting the summary judgment motion of defendants, the estate of John J. Treacy and its executor, Robert J. Hourigan. The trial court found that as a matter of law defendants were under no obligation to contribute to the college expenses of plaintiff's daughter, Anne Treacy, pursuant to sections 510(d) and 513 of the Illinois Marriage and Dissolution of Marriage Act (hereinafter Act) (Ill. Rev. Stat. 1989, ch. 40, pars. 510(d), 513).

The sole issue presented for review is whether, under section 510(d) and section 513 of the Act, the Illinois General Assembly has empowered the circuit court to enter an order against the estate of a noncustodial deceased parent for the payment of college expenses of a nonminor child when there was no such previous obligation imposed upon the parent to be charged prior to his death.

We affirm.

Plaintiff and John J. Treacy were married on June 25, 1968. One child, Anne Treacy, was born of the marriage on March 14, 1970. On May 26, 1976, a judgment for divorce was entered. A settlement agreement was incorporated into the dissolution judgment. Plaintiff was awarded custody of Anne, and Treacy was ordered to pay child support in the amount of $225 a month. The judgment, however, did not have a provision for the payment of Anne's college expenses.

Anne graduated from high school in June 1988, the time at which her child support payments under the judgment were to cease. Treacy died on July 4, 1988. In August 1988, Anne entered college. Plaintiff and Anne brought a petition seeking back payments of child support and contribution toward the payment of Anne's college expenses against Treacy's estate. Prior to this petition, plaintiff had not sought to modify the original judgment order so as to provide for the payment of Anne's college expenses.

On August 25, 1989, defendants filed a motion for summary judgment on grounds that neither plaintiff nor Anne was entitled, under the dissolution judgment, to contribution to payment of Anne's college expenses from the Treacy estate since there was no existing obligation to pay such expenses at Treacy's death.

On October 24, 1989, the trial court granted defendants' summary judgment motion in part, finding that plaintiff was not entitled to contribution from the estate for Anne's college expenses. The court held that sections 510(d) and 513 of the Act do not apply unless the parent to be charged was obligated at the time of his

death. Anne's claim was dismissed, as she lacked standing. However, the court found that plaintiff was entitled to back support. Plaintiff only appeals that portion of the decision which denied her claim for college expenses.

■■ ■ Plaintiff argues that sections 510(d) and 513 of the Act clearly permit the filing of a claim for college expenses of a nonminor child against the child's deceased parent. Section 510(d) provides:

"Unless otherwise agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by emancipation of the child, except *as otherwise provided herein*, but not by the death of a parent obligated to support the child. When a parent obligated to pay support dies, the amount of support may be modified, revoked or commuted to a lump sum payment, to the extent just and appropriate in the circumstances, and such determination may be provided for at the time of the dissolution of the marriage or thereafter." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 40, par. 510(d).)

Section 513 provides, in pertinent part:

"The Court also may make such provision for the education and maintenance of the child or children, whether of minor or majority age, out of the property and income of either or both of its parents as equity may require, whether application is made therefor before or after such child has, or children have, attained majority age. *** In making such awards, the court shall consider all relevant factors which shall appear reasonable and necessary, including:

(a) The financial resources of both parents.

(b) The standard of living the child would have enjoyed had the marriage not been dissolved.

(c) The financial resources of the child." Ill. Rev. Stat. 1989, ch. 40, par. 513.

■■ ■ The fundamental principle of statutory construction is to give effect to the intent of the legislature. (*Carson Pirie Scott & Co. v. Illinois Department of Employment Security* (1989), 131 Ill. 2d 23, 34.) The intent of the legislature in enacting section 510(d) was to "protect the dependent child of divorced parents from loss *** through disinheritance, a loss from which a child of nondivorced parents is indirectly insulated. A divorced parent is still free to disinherit a child of his divorced marriage, subject only to the limited obligation of support. In balance, section 510[d] mitigates rather

than aggravates inequality." *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 581.

We note that, at the time *Kujawinski* was written, section 510(d) was designated as section 510(c). However, as plaintiff points out, when section 510 was amended, in 1988, section 510(c) was re-designated as section 510(d). The language of the section, however, remained the same. Prior to the enactment of this section, a child support order in a divorce judgment had no legal effect after the death of one of the parties. The section now provides that the obligation to support survives the death of the parent charged. *In re Estate of Champagne* (1987), 153 Ill. App. 3d 560, 562.

█ The legislative intent of section 513 was to furnish a means to provide for the education of children of divorced parents. (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 580.) However, the imposition of a section 513 order for educational expenses is within the sound discretion of the trial court; the section does not mandate that divorced parents must in all cases provide their children with funds for post-high school education. *In re Support of Pearson* (1986), 111 Ill. 2d 545, 551.

█ In light of the legislative intent of these statutory sections, the court in *In re Estate of Champagne* (1987), 153 Ill. App. 3d 560, held that "an order under section 513 of the Act for education *** of a child, whether of minor or majority age, is intended to be included within section 510[d] the same as a support order and is not terminated by the death of a parent obligated to pay for these expenses." (*Champagne*, 153 Ill. App. 3d at 564.) The court interpreted the language in section 510(d) "*except as otherwise provided herein*" as referring to section 513. *Champagne*, 153 Ill. App. 3d at 563.

Although we agree with the holding in *Champagne*, we are not persuaded that this holding would extend to situations, such as the instant case, where there was no prior order mandating the payment of the child's college expenses. The facts in *Champagne* are distinguishable in that there was an agreed order and stipulation in existence prior to the charged party's death. In fact, the court held that "[i]f there is a valid order for educational expenses at the time of the payor spouse's death, under 510[d] the support may be modified, revoked or commuted to a lump sum payment." (Emphasis added.) (*Champagne*, 153 Ill. App. 3d at 564.) *Champagne*, therefore, is inapposite.

Plaintiff argues that the trial court ignored the fact that the initial divorce judgment was still in existence after Anne's emancipa-

tion. She reasons that the mere existence of a general provision for child support in the initial judgment satisfies the trial court's requirement of a preexisting obligation to pay for college expenses. A general provision for support, however, does not imply that college expenses must be included.

■ In construing a dissolution judgment, the normal rules for contract construction apply. The provisions in the judgment must be interpreted so as to give effect to the parties' intentions. The court will determine these intentions solely from the instrument. (*In re Marriage of Holderrieth* (1989), 181 Ill. App. 3d 199, 202.) We find that based on the language in the judgment we cannot infer that a provision for college expenses was intended to be included by the parties.

■ Moreover, plaintiff's contention that section 513 in and of itself mandates the imposition of educational expenses, regardless of whether such provision is contained within the initial divorce judgment, is also without merit. The section does not mandate the imposition of educational expenses; the imposition of these expenses is solely within the discretion of the trial court. *In re Estate of Pearson* (1986), 111 Ill. 2d 545, 551; *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 580.

■ We find that the settlement agreement as incorporated in the judgment for dissolution controls the disposition of the instant case. The court in *In re Marriage of Houston* (1986), 150 Ill. App. 3d 608, also held that the settlement agreement rather than section 513 was controlling:

"We believe that respondent's reliance on section 513 is misplaced. That provision deals, in relevant part, with court-awarded payments for the education and maintenance of the parties' children *** after a marriage has been dissolved. *** This case, however, does not involve an initial award of payments for educational expenses made by the court at the time of dissolution or in a post-decree motion [citation], or even a request for modification of such an award. Nor is this a situation where the original dissolution decree reserved the question of educational expenses for future consideration." *Houston*, 150 Ill. App. 3d at 613-14.

Similarly, the instant case does not involve an initial award for payment of college expenses or the modification of such an award. Nor is this a situation where the question of educational expenses was reserved for future consideration. The *Houston* court went on to find that if it were to ignore the parties' settlement agreement

as incorporated into the divorce judgment, it would convert every proceeding under section 502 (Ill. Rev. Stat. 1989, ch. 40, par. 502), the statutory section which governs separation agreements, into a *de novo* review of the settlement agreement. The statutory section would be rendered a nullity. (*Houston*, 150 Ill. App. 3d at 614; see also *In re Marriage of Holderrieth* (1989), 181 Ill. App. 3d 199, 207.) We have found few cases in which the court has considered application for educational expenses pursuant to section 513 where no provision for such expenses was included in the settlement agreement. (See *Wait v. Wait* (1987), 158 Ill. App. 3d 271; *Potocki v. Potocki* (1981), 98 Ill. App. 3d 501.) The circumstances of the instant case, however, are distinguishable in that a section 513 application was not made during Treacy's lifetime. No petition was ever filed in the domestic relations court concerning educational expenses while Treacy was alive. This issue was raised in the form of a claim only after Treacy's death.

Plaintiff further argues that pursuant to *In re Marriage of Albiani* (1987), 159 Ill. App. 3d 519, the appropriate time for seeking payment of college expenses does not arise until after the child has actually entered college and has incurred such expenses. Plaintiff contends that a "window of vulnerability" would exist between the time the minor is emancipated and the time the minor enrolls in college should this court allow the trial court's decision to stand. She reasons that if, pursuant to *Albiani*, the time for bringing a section 513 petition for college expenses is after a child has enrolled in college, the child would be precluded from receiving contribution from the parent to be charged if that parent dies before a section 513 petition is brought. We disagree.

The *Albiani* court did not hold that the only time for seeking payment of college or educational expenses is when the child has actually enrolled in the institution and incurred expenses. The court held, *inter alia*, that the trial court did not abuse its discretion in deferring adjudication of which party was to have the ultimate responsibility of paying the educational expenses of one of their children. The question of educational expenses was merely reserved for future consideration, as the court retains continuing jurisdiction to decide this matter if the parties are unable to reach an agreement. (*Albiani*, 159 Ill. App. 3d at 527.) Plaintiff's interpretation of the *Albiani* holding is simply incorrect.

There has been some concern as to whether the fortuity of the instant case or like situations—that being the failure to bring a section 513 petition for the educational expenses of an emancipated

child prior to the death of a parent—would lead to inequitable results. It is not, however, the timing or fortuity of Treacy's death that foreclosed contribution from the estate but, as the trial court found, it is the lack of any court order imposing contribution to Anne's college expenses prior to Treacy's death. As previously held, we cannot infer an obligation for the payment of college expenses based on a general support provision in the judgment for dissolution, nor do we find that sections 510(d) and 513 authorize the imposition of this new obligation under the circumstances of this case.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

LINN, J., concurs.

JUSTICE JIGANTI, dissenting:

I respectfully dissent. When read together, sections 510(d) and 513 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, pars. 510(d), 513) authorize the court to enter an order against a deceased parent's estate for the payment of college expenses of an emancipated child.

Section 510 of the Illinois Marriage and Dissolution of Marriage Act governs the modification and termination of provisions for maintenance, support and property disposition. Under section 510(d), "[w]hen a parent obligated to pay support dies, the amount of support may be modified, revoked or commuted to a lump sum payment." (Ill. Rev. Stat. 1989, ch. 40, par. 510(d).) I do not believe that the legislature intended the term "obligated" to mean currently obligated, or obligated under an existing court order. There is no rationale for such an interpretation which could produce harsh and artificial results. For example, a parent may be under no current obligation to pay support because of illness, unemployment, or simply failure of personal service. If the parent then dies, under the majority's interpretation, the child cannot assert a claim for support against the parent's estate. The fortuitous death of the parent controls the court's disposition, and the child is severely prejudiced. Such a result is not in harmony with the legislature's intent to mitigate the harm to children as a result of divorce. To the contrary, according to the court's interpretation in *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 376 N.E.2d 1382, the tenor of section 510(d) is that the death of the parent should not prejudice the child.

Section 513 of the Illinois Marriage and Dissolution of Marriage Act governs support for nonminor children and educational expenses. (Ill. Rev. Stat. 1989, ch. 40, par. 513.) Under section 513, the court, as equity requires, may make provisions for the education of either minor or emancipated children. Application for educational support may be made before or after such child has obtained majority age. (Ill. Rev. Stat. 1989, ch. 40, par. 513.) Application pursuant to section 513 is considered to be a modification of the divorce decree, regardless of whether the decree contains any provision requiring either parent to contribute to the child's college education. (*Wait v. Wait* (1987), 158 Ill. App. 3d 271, 510 N.E.2d 600.) The court retains jurisdiction to modify a divorce decree as changing circumstances warrant. (*In re Marriage of Albiani* (1987), 159 Ill. App. 3d 519, 512 N.E.2d 30.) Under the general provisions outlined above, there is no question that notwithstanding the absence of any such provision in the original divorce decree, an emancipated child has a right to assert a claim for college expenses against a living parent. (*Wait v. Wait*, 158 Ill. App. 3d 271, 510 N.E.2d 600.) I do not believe that the legislature intended a fortuitous circumstance, such as the death of the parent, to sever the child's entitlement to assert a claim.

In conclusion, section 510(d) provides in part that "provisions for the support of a child are terminated by emancipation of the child, except as otherwise provided herein, but not by the death of a parent obligated to support the child." (Ill. Rev. Stat. 1989, ch. 40, par. 510(d).) The statutory language "or otherwise provided herein" refers to section 513. (*In re Estate of Champagne* (1987), 153 Ill. App. 3d 560, 505 N.E.2d 1352.) When read together, the two statutes provide that the parent's obligation to support a child and any obligation to pay for educational expenses that may arise under section 513 are not terminated by the death of the parent. When so interpreted the statutes provide, as they were intended to, that children of divorced parents are protected from loss through disinheritance of support and educational opportunities.