2023 IL App (1st) 221900-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

SECOND DIVISION
June 20, 2023

No. 1-22-1900

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | |
| | ) | Appeal from the |
| CELESTE A. BRYANT, | ) | Circuit Court of |
| | ) | Cook County |
| Petitioner-Appellee, | ) | |
| | ) | No. 19 D 3760 |
| and | ) | |
| | ) | The Honorable |
| JEFFREY P. BRYANT, | ) | Gregory Ahern, |
| | ) | Judge Presiding. |
| Respondent-Appellant. | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held:* Trial court's entry of two-year plenary order of protection upon finding of abuse was not contrary to the manifest weight of the evidence. Remaining arguments raised on appeal are either unreviewable or forfeited.

¶ 2    The respondent, Jeffrey P. Bryant, appeals *pro se* the trial court's entry of a two-year plenary order of protection entered against him under the Illinois Domestic Violence Act of 1986 (750 ILCS 60/101 *et seq.* (West 2020)) (Domestic Violence Act) following a bench trial of which he had notice but declined to attend. We affirm the judgment of the trial court.

¶ 3                                           I. BACKGROUND

¶ 4          On June 2, 2022, the petitioner, Celeste A. Bryant, filed a petition for an order of protection against the respondent in conjunction with the parties' pending action for dissolution of marriage. She alleged in that petition, which sought both an emergency and a plenary order of protection, that on June 1, 2022, and during the preceding week:

> "[The respondent] has shown up at my parents' house multiple times with law enforcement creating a scene. He is aggressive and violent. He attempts to take my children when he is aware he cannot due to his license being suspended. He verbally abuses me and my parents and brother. Threatens to take matters into his own hands."

It also alleged that the respondent had committed "verbal abuse via text and e-mail."

¶ 5          The trial court granted the emergency aspect of the petition on June 2, 2022, entering an emergency order of protection which, *inter alia*, prohibited the respondent from having any contact with the petitioner, her parents, and her two brothers. The emergency order of protection was extended on six occasions through November 14, 2022, when a hearing on the plenary order of protection was set to occur in conjunction with the trial of the parties' dissolution action scheduled for that date. The trial date of November 14 was set by a case management order entered on August 29, 2022. That case management order specified that the trial was to take place "in person," as many preliminary proceedings in the case had been conducted through Zoom videoconference software since 2020.

¶ 6          A pretrial conference was conducted via Zoom on October 7, 2022. The court's order of that day indicates that, during the pretrial conference, the respondent stated that the trial judge was " 'full of crap' " and that he would " 'take matters into his own hands' " if the court did not rule on certain pleadings he had filed. The respondent also told the trial judge to " 'f*** off' " during

a dialogue about issues that were pending in the case. He then disconnected from Zoom before the matter was concluded, and, after then reconnecting, he committed perjury by denying making those statements when the trial court confronted him about it. By its order of October 7, the trial court found the respondent in direct civil contempt as a result of his statements to the court, ordered him to turn himself in "in person" at a sentencing hearing set for October 11, 2022, and continued all pending matters to the trial date of November 14 without further notice.

¶ 7        The order of October 11, 2022, states that the respondent appeared at the hearing via Zoom, "in direct violation of the Court's order of October 7, 2022 to appear in person." The trial court sentenced him to 6 days in the Cook County jail for the first two statements set forth above and 21 days for the last statement. The October 11 order again provided that all pending matters were continued to the trial date of November 14 without further notice.

¶ 8        The transcript of the court proceedings of November 14, 2022, indicates that the respondent did not appear for trial. In discussing the respondent's absence, the trial court reiterated that its order of August 29 stated that trial was to be "in person." It noted that he had previously failed to appear personally on October 11 despite a court order that he appear "in person" that day. And it stated that on October 11, the court had personally reminded the respondent that the matter was set for trial in person on November 14. The trial court indicated that the respondent had sent e-mails that morning stating that he was waiting on Zoom, but the court declined to conduct any Zoom hearing based on its previous orders that trial was to commence in person at 9:30 a.m. The trial court stated that the respondent had sent an additional e-mail at 10:00 a.m. that morning to the petitioner's counsel, "saying just let me know what orders were entered." Finally, the court stated that it had issued an order for respondent's arrest on October 11, but that as of the day of trial, he had not been picked up, turned himself in, or served any of his sentence.

¶ 9     The trial then proceeded with the petitioner's testimony in support of her petition for plenary order of protection. The petitioner testified that on June 1, 2022, the respondent had come to her workplace and threatened her in front of her coworkers. This arose from a dispute in which he was attempting to pick up the parties' children despite the suspension of his driver's license. He also called the police to the petitioner's office that day, and he argued with the police in front of her coworkers. The petitioner testified that he threatened to "take matters into his own hands," which the petitioner understood as a threat of physical harm against her, her coworkers, or her family members if the police refused to help him or if the courts were not in his favor.

¶ 10    She testified to a previous order of protection entered against the respondent in 2017, which resulted from an incident in which he choked her in front of her children, as well as an incident in October 2016 in which he flung her across their apartment. She also testified to various threats made by the respondent against her parents and brothers. She testified that the respondent would go to her parents' house, where he has threatened them in her presence. She testified that her younger brother had also obtained an order of protection against the respondent, as the result of an incident at a gas station in which the respondent punched her brother multiple times while he was on the ground. And she testified to another incident in which the respondent had falsely sought an order of protection against her older brother by stating that he had threatened the respondent with a gun. She testified to a call with the respondent in which he told her that he was going to "f*** up both of my brothers because I wasn't, you know, being nice with him with this stuff." She testified that since entry of the emergency order of protection on June 2, 2022, the respondent had left her alone, and she felt safe with it in place. She testified that she felt that an order of protection was the only way to stop the respondent's behavior.

¶ 11    Following the petitioner's testimony, the trial court stated that it found by a preponderance

of the evidence that the petitioner had met the standard for entry of a two-year plenary order of protection. The trial court stated that it found her testimony to be credible, noting for the record that she had been emotional and crying when recounting past abuse. The trial court also referenced the conduct that had led it to hold the respondent in direct civil contempt and stated that the court had witnessed firsthand that the respondent's "conduct has been escalating." The trial judge noted that the incident was the first time in ten years that he had made that finding against a litigant.

¶ 12     The matter next proceeded to the prove-up of the dissolution proceedings, including further testimony by the petitioner. At the conclusion of that testimony, the trial court entered a judgment of dissolution of marriage, a marital property order, and a judgment on the allocation of parental responsibilities and parenting plan. Ten motions that had been filed by the respondent and continued to the trial date were also denied. The respondent then filed a timely notice of appeal.

¶ 13                                    II. ANALYSIS

¶ 14                        *1. Entry of Plenary Order of Protection*

¶ 15     The respondent's primary argument on appeal is that the trial court erred by granting the petitioner a plenary two-year order of protection. A plenary order of protection is the longest in duration of the three kinds of orders of protection authorized under the Domestic Violence Act, and it can last up to two years. See 750 ILCS 60/220(b)(0.05) (West 2020). Its issuance requires that the respondent receive notice of the hearing for that order (*id.* §§ 210.1, 219) and, for each remedy sought, that the requirements of section 214 of the Domestic Violence Act be satisfied. *Id.* §§ 214, 219(2). In turn, section 214(a) provides in pertinent part that, if the court finds that a petitioner has been "abused" by a family member, an order of protection prohibiting that abuse shall issue. *Id.* § 214(a). "Abuse" is defined to include, *inter alia*, "physical abuse" and "harassment." *Id.* § 103(1). "Harassment" means "knowing conduct which is not necessary to

accomplish a purpose that is reasonable under the circumstances; would cause a reasonable person emotional distress; and does cause emotional distress to the petitioner." *Id.* § 103(7). Under the definition of harassment, "creating a disturbance at petitioner's place of employment" is conduct presumed to cause emotional distress unless rebutted by a preponderance of the evidence. *Id.* Whether a petitioner has been abused is the central issue in order-of-protection proceedings, and it is an issue of fact that must be proven by a preponderance of the evidence. *Best v. Best*, 223 Ill. 2d 342, 348 (2006). This court will reverse a trial court's finding of abuse only if it is contrary to the manifest weight of the evidence. *Id.* at 350.

¶ 16　　　　On appeal, the respondent first takes issue with the allegation in the petition that the respondent had sent the petitioner threatening messages by e-mail and text prior to his arrival on June 1, 2022. He asserts that these allegedly threatening messages were his "forewarning her that the children [were] not available for pick up, and he was on his way with the police to enforce the parenting time order of 3/31/22." He asserts that the only reason he arrived with the police at her parents' house or workplace was because the children were not available for pick-up, as required by the parenting time order then in effect. He states that when he arrived with the police (presumably referring to the petitioner's parents' house), neither the petitioner nor the parties' children were present. However, the petitioner's brother Fernando was there. Fernando allowed the police into the house and advised that the petitioner did not live there. The respondent argues that his giving notice to the petitioner, his arriving with the police, and Fernando's allowing the police into the house show that no one was in danger or harassed. He also argues that this shows that the events that took place that day do not qualify as warranting an order of protection under the Domestic Violence Act and that "there is no aggressor or victim." Additionally, he argues that because the petitioner was not present at her parents' house on the two dates, her account of

Fernando's experience is hearsay that fails to meet the burden for entry of an order of protection.

¶ 17      We reject the respondent's argument that the trial court erred in entering the two-year plenary order of protection. He is essentially arguing that, under the circumstances, his conduct on June 1 was a reasonable attempt to enforce his parenting time when the petitioner was refusing to comply with the applicable parenting time order. The problem, of course, is that the appropriate place for the respondent to have presented this argument was at the trial on November 14, 2022, at which he declined to appear. Had the respondent appeared at trial, he could have testified and presented evidence as to his version of events, cross-examined the petitioner, and made appropriate arguments about why a plenary order of protection was unwarranted. The facts demonstrate that the respondent clearly had notice of the trial date and that it was to occur in person. Despite having notice, the respondent failed to attend the trial. The trial court thus appropriately conducted the trial in the respondent's absence and required the petitioner to present evidence to prove her claims. *In re Marriage of Drewitch*, 263 Ill. App. 3d 1088, 1094 (1994); accord *In re Marriage of Potenza and Wereko*, 2020 IL App (1st) 192454, ¶ 64-67.

¶ 18      Having done so, we conclude that the trial court's finding of that the petitioner had been abused by the respondent and was entitled to a two-year plenary order of protection was not contrary to the manifest weight of the evidence. For a finding to be against the manifest weight of the evidence, the opposite conclusion must be clearly evident or the finding itself must be unreasonable, arbitrary, or not based on the evidence presented. *Best*, 223 Ill. 2d at 350. Under the manifest weight standard of review, we give deference to the trial court as finder of fact because it is in the best position to observe the conduct and demeanor of the parties and witnesses. *Id.* A reviewing court will not substitute its judgment for that of the trial court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn. *Id.* at 350-51.

¶ 19     Here, the trial court heard testimony at trial that on June 1, 2022, the respondent had come to the petitioner's workplace and threatened her in front of her coworkers concerning a dispute about his transporting of the children during his parenting time despite the suspension of his driver's license. The respondent had also called the police to her workplace, and he argued with them in front of her coworkers. He made what she perceived as threats of physical harm against her, her coworkers, or family members if he did get his way via the police or in court. The petitioner also testified to two past events in which the respondent had choked her and flung her across their apartment, as well as to multiple threats of violence made by the respondent against her parents and brothers. The trial judge stated that he found the petitioner credible in her testimony and added that he had witnessed the respondent's aggressive behavior firsthand at the pretrial conference, which led, for the first time in ten years, to him finding a litigant in direct civil contempt. The respondent's arguments on appeal, which mostly fail to address the petitioner's actual trial testimony and instead attempt to argue facts unsupported by the record, fall far short of a showing that the trial court's finding of abuse or its entry of a plenary order of protection were against the manifest weight of the evidence. Rather, we hold that the trial court's conclusion was supported by the evidence at trial and is neither unreasonable nor arbitrary.

¶ 20                              *2. Guardian* ad litem

¶ 21     The respondent next argues that, despite twice appointing a guardian *ad litem* (GAL) on behalf of the parties' children, the trial court "blocked a thorough investigation into both parents and children" and "sidelined the GAL and its process." The respondent argues that this demonstrates the trial court's prejudice toward the respondent and his two children.

¶ 22     We are not able to address this argument because we do not locate in the record any order or ruling by the trial court concerning the GAL which could be the subject of the respondent's

challenge. This is due to the respondent's failure to comply with the supreme court rule which requires that the "Argument" section of an appellate brief shall contain citation to "the pages of the record relied on" in support of the argument made. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Although the respondent attempted to remedy this in his reply brief, we are still unable to find any order by the trial court directed at the GAL other than one order appointing a GAL.

¶ 23    Our review of the record indicates that the issue of appointment of a GAL for the parties' children was first raised on December 17, 2020, and the matter was continued various times through March 31, 2022, when the trial court appointed a GAL upon the respondent's motion. The order directed the petitioner's attorney to send the order of appointment to the GAL within seven days, and the GAL was then to file his appearance within seven days thereafter. A petition dated May 5, 2022, filed with respect to a different matter indicates that the appointed GAL had not responded to petitioner's counsel as of that time. And the petitioner's brief on appeal states that the appointed GAL never responded to the attempted contact by the petitioner's attorney. Other than this, we see nothing in the record that the trial court did anything with respect to a GAL. Instead, it appears that after the GAL who was initially appointed failed to file an appearance in the case, the respondent, as the party who had sought the appointment of a GAL, failed to bring this fact to the trial court's attention or to seek the appointment of a different GAL. The appointment of a GAL upon the motion of a party is a matter of the trial court's discretion; it is not mandatory, and the trial court does not abuse its discretion by failing to appoint a GAL *sua sponte*. *In re Marriage of Vondra*, 2013 IL App (1st) 123025, ¶ 19. We find nothing in the record that constitutes error on the part of the trial court with respect to the GAL.

¶ 24                                 *3. Conducting of trial*

¶ 25    The respondent's final argument is that the trial court denied him seven full days prior to trial

to review the petitioner's evidence, which was due on November 7, 2022. He argues that the trial court erred by proceeding to trial and refusing to allow him to participate via Zoom instead of continuing the matter to give him time to review the evidence. The respondent states that the reason he did not appear in person at the trial was his understanding that he would be given seven days to review the evidence and prepare for trial. He asserts that the trial court additionally prejudiced him by not allowing him to request a continuance via Zoom.

¶ 26        We find no merit to this argument. Principally, we reject any argument that the trial court erred by proceeding to conduct the trial in person when the respondent failed to attend or sent an e-mail indicating that he intended to participate only via Zoom. See *Drewitch*, 263 Ill. App. 3d at 1094; *Potenza*, 2020 IL App (1st) 192454, ¶¶ 64-67. The facts set forth above demonstrate that the trial court made the respondent well aware of its intention to hold the trial in person beginning at 9:30 a.m. on November 14, 2022. This is clearly set forth in the trial-setting order of August 29, 2022, and the trial judge stated that on October 11, 2022, he had personally reminded the respondent that the matter was set for trial in person on November 14, given the respondent's prior disregard of the order that he appear in person at the sentencing hearing. Also, the respondent has not cited any order purportedly entitling a litigant in his position to participate in a trial or other evidentiary proceeding via Zoom as of that time, without prior permission from the trial court.

¶ 27        As to the remaining aspects of this argument, the respondent has again failed to cite any pages of the record indicating that these were arguments properly presented to the trial court or subject to any ruling by it. As referenced above, an appellant is required by Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) to cite to the pages of the record in conjunction with the argument made. Failure to include citations relevant to the argument being made can result in the argument being deemed forfeited. *Mikrut v. First Bank of Oak Park*, 359 Ill. App. 3d 37, 51 (2005).

Additionally, arguments that were never presented to the trial court are forfeited and may not be made for the first time on appeal. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14. The purpose of the rule requiring parties to raise issues in the trial court is to ensure both that the trial court is given an opportunity to correct any errors prior to appeal and that a party does not obtain reversal through his or her own inaction. *Id.*

¶ 28    The record on appeal contains e-mails on this topic, which are attached as exhibits to an unrelated brief involving fee waivers. However, nothing in the record indicates that the respondent ever made any motion or otherwise properly raised an argument before the trial court that he had not been given adequate time prior to trial to review the evidence tendered by the petitioner. Likewise, we find nothing such as a motion to vacate the judgment or similar motion arguing that the respondent's failure to appear in person at trial was based on a misunderstanding that he was entitled to an additional seven days to review evidence and prepare or that he was prejudiced by his inability to request a continuance of the trial via Zoom. Accordingly, none of these arguments are the subject of a trial court ruling which we can review, and they cannot be raised for the first time on appeal. We therefore deem these arguments forfeited.

¶ 29    III. CONCLUSION

¶ 30    For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 31    Affirmed.